IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

VELEKA BRYANT,

      Petitioner,

v.                                 CASE NO. 4:08-cv-442-RH-GRJ

SECRETARY, DEPT. OF
CORRECTIONS,

      Respondent.

_____/

## REPORT AND RECOMMENDATION

Petitioner initiated this case by filing, through counsel, a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.  Doc. 1.  The Petition stems from Petitioner's Leon County jury-trial conviction for three counts of simple child abuse, for which she received two consecutive five-year sentences of imprisonment and one consecutive five-year sentence of probation.  Respondent filed a response and an appendix with relevant portions of the state-court record, and Petitioner filed a reply. Docs. 11, 18.  Upon due consideration of the Petition, the Response, the Reply, and the state-court record, the undersigned recommends that the Petition be denied.[1]

## State-Court Proceedings

The relevant portions of the record may be summarized as follows.  Petitioner was charged by information with one count of aggravated child abuse by malicious punishment and four counts of felony child abuse.  The charges arose from incidents

_____

[1]Because the Court may resolve the Petition on the basis of the record, the Court has determined that an evidentiary hearing is not warranted.  *See* Rule 8, Rules Governing Habeas Corpus Petitions Under Section 2254.

occurring on two dates in June 1999 at a daycare center where Petitioner was employed.  The incidents were recorded on a hidden surveillance camera in the center's "toddler room," and the camera recorded time-lapse videotape of Petitioner and other workers interacting with the children.  Petitioner was represented by Harold Richmond at her first trial.  The State, over counsel's objection, introduced into evidence an edited, enhanced, videotape excerpt produced from the original time-lapse videotapes.  At the conclusion of the trial, the jury found Petitioner guilty of three counts of simple child abuse, with one conviction being a lesser-included offense of the aggravated child abuse charge.  Petitioner was sentenced to two concurrent five-year prison terms on two of the counts, and to five years' probation on the remaining account.

The Florida First District Court of Appeal reversed for a new trial due to the late disclosure of the videotape evidence, which had not been provided to Petitioner's counsel before trial.  *Bryant v. State*, 810 So.2d 532 (Fla. 1st DCA 2002).  While the court found no reason to disturb the trial court's finding that the original time-lapse videotapes were authentic, the court observed that the trial court had not viewed and compared the original time-lapse videotapes with the excerpt admitted at trial before ruling on the excerpt's admissibility.  The appellate court attributed this lapse to the prosecution's "springing it on the defense at trial, which also led to the defense's inability to have it examined by an expert."  *Bryant*, 810 So.2d at 537.   The court observed that it was the defense's burden to "object with specificity to any putative dissimilarity between the original and the duplicate," but that the late disclosure had deprived the defense of an opportunity to consult an expert to assess whether any differences in the originals and the excerpt were material.  *Id*. at 538.  The Court concluded that:

> Remanding for retrial will allow informed decision, after opportunity for input from both parties' experts, as to whether the edited, fully enhanced excerpt faithfully reproduces all material aspects of the original, time lapse videotapes, so as to render the excerpt admissible under the best evidence rule against appellant as a duplicate of the originals. If the excerpt is admitted on retrial, the jury should be afforded a chance to compare the original, time lapse videotapes with any enhanced version, if any party so requests.

*Id*. The court noted that the jury was entitled to compare the original time-lapse videotapes with the excerpt, and sated that "[t]he jury should be shown any videotape received in evidence.". *Id*. at 539 (citing *Crews v. State*, 442 So.2d 432, 434 (Fla. 5th DCA 1983) ("The jury . . . requested that the videotape, which was admitted into evidence, be furnished to them, as they have every right to do.")).

A few months after Petitioner's case was reversed, the First DCA affirmed the convictions of Petitioner's co-worker at the daycare, Debra A. Jefferson, who was convicted by a jury of one count of aggravated child abuse and two counts of child abuse.  In that case, the First DCA found "no error in allowing in evidence a copy of a 'time lapse' videotape over the objection that fewer frames per second in the original videotape (than standard videotaping entails) 'inaccurately portray either the speed or the range of motion'" by their very infrequency.  *Jefferson v. State, 818 So.2d 565, 566 (*Fla. 1st DCA 2002) (citation omitted).   The Court stated that "Appellant cites no authority for her blanket objection to time lapse videotapes and copies thereof.  Nor does she explain why ten frames per second are too few or thirty frames per second enough. The copy the jury saw, moreover, did have thirty frames per second, and the trial judge found, on the basis of uncontroverted expert testimony, that the copy was 'an accurate depiction of what's on' the original."  *Id*.

Petitioner was retried before a different judge and with new counsel, John Leace. At the second trial, the original time-lapse videotapes as well as the edited excerpt were received into evidence, although only the excerpt was shown to the jury.  The State presented the testimony of the videographer who prepared the excerpt, Carl Knowles. Knowles explained that the time-lapse surveillance recordings were made at the rate of 10 frames per second, in contrast with traditional video that records at a "real-time" rate of 30 frames per second.  In making the excerpts, Knowles transferred the relevant segments of the surveillance tapes to a video format that would allow the playback speed to be controlled so that the video could be viewed at the traditional rate of 30 frames per second, as close to real-time as possible.  Knowles also prepared an enhanced or "zoomed" version of the relevant segments.  Leace cross-examined Knowles about the process of producing the excerpts, but did not present testimony by a defense expert.   Following Knowles' testimony, and in light of the First DCA opinion reversing Petitioner's first conviction, the trial court made an express finding on the record that "the Court has seen both the originals and the enhanced version prepared by Mr. Knowles.  That the duplicate, I find it to be accurate, authentic, and trustworthy representation of the original tape.  And they depict the same images, have not been manipulated to . . . . impermissibly alter[] the images."  Exh. G. at 143.

Leace objected that the videotape excerpt did not satisfy the test for admission of "silent witness" evidence, and further moved to prevent the parents whose children appeared in the video from testifying.  The Court overruled the objection and denied the motion.  Each segment depicting the three children was played for the jury, and each child's parent identified Petitioner and their respective child.  All of the children were

assigned to the daycare's "toddler room" and were under two years of age.  The first

incident involved "B.S."[2]  The child's mother testified that the video showed her son

having his diaper changed by Petitioner.  The State asked "[d]id you give permission to

the defendant in this case, Veleka Bryant, or anyone else to strike your child under the

chin causing his head to recoil back as we observed?"  The witness responded

"absolutely not."  The second incident involved "K.G.", who had asthma and eczema.

After the video was played for the jury, K.G.'s mother identified Petitioner as the person

in the video who was holding a rag over K.G.'s face and nose.  The third incident

involved "J.M."  J.M.'s mother testified that the videotape depicted J.M. sitting at a table,

and Petitioner striking the child.  *Id*. at 161-74

        At the close of the State's case in chief, Leace moved for a judgment of acquittal.

Leace argued that the State had failed to prove that the activity depicted on the video

could reasonably be expected to cause injury.  In opposition to the motion, the State

argued that there was no requirement to prove that an injury actually occurred.  The

State further argued as to K.G. that the act in which his mouth was covered with a rag

lasted for 25 seconds which, for an asthmatic child, posed a risk of injury.  As to B.S.,

the State argued that "[y]ou see the individual hit the child underneath the chin hard

enough to rock his head back, recoiling his head back, and we're talking about a child

that is probably under two years of age."   As to J.M., the State argued that the

videotape depicted that she was "struck twice with an object.  And both times her head

recoiled and she covers and begins to cry."  *Id*. at 178-79.  Leace argued that the

---

        [2]Petitioner has identified the children by their initials in order to protect their
privacy and the Court will use the same identification.

footage was susceptible to "any number of interpretations." He contended that there

was no evidence that K.G. could not breathe during the incident, or that there was

"actual contact" to J.M., and that there was no testimony that any child had exhibited a

welt or mark from the incident. The court concluded that these matters reflected factual

issues for the jury, and denied the motion. *Id*. at 181-83. The defense rested without

presenting evidence. *Id*. at 185.

Petitioner was found guilty on all three counts. Petitioner obtained new counsel,

Richard Alan, prior to sentencing. At the conclusion of the sentencing hearing, the court

sentenced Petitioner to two consecutive five-year prison terms, followed by a five-year

term of probation. Petitioner filed a motion to correct sentencing error arguing that the

harsher sentence was vindictive and violated her due process rights, pursuant to *North

Carolina v. Pearce*, 395 U.S. 711 (1969). The sentencing court denied the motion. Exh.

L, N.   Petitioner's counsel also filed a motion for new trial that was argued at

sentencing, supported by the affidavit of a video expert, John Chew. Exh. Q. The court

denied the motion. Exh. I at 30.

Petitioner appealed, arguing that the trial court abused its discretion in admitting

the videotape excerpt, erred by denying the motion for judgment of acquittal, that a jury

instruction broadened the permissible basis for conviction beyond the charge in the

information, that the court imposed a vindictive sentence, and that the Florida Criminal

Punishment Code is facially unconstitutional under *Blakely v. Washington*, 124 S.Ct.

2531 (2004). The First DCA issued a citation opinion affirming, and denied rehearing.

*Bryant v. State*, 896 So.2d 960 (Fla. 1st DCA 2005); Exh. X, Y.

Petitioner filed a motion pursuant to Fla. R. Crim. P. 3.850, alleging that her trial

counsel was *per se* ineffective under *United States v. Cronic*, 466 U.S. 648, 654 (1984), and rendered ineffective assistance under *Strickland v. Washington*, 466 U.S. 668 (1984).  The state court conducted an evidentiary hearing at which Petitioner's mother, the video expert John Chew, and Petitioner's former counsel John Leace and Harold Richmond testified.  Exh. AA.  Following the hearing, the court entered a written order denying the Rule 3.850 motion.  The First DCA affirmed *per curiam* without written opinion.  *Bryant v. State*, 982 So.2d 1180 (Fla. 1st DCA 2008).

Petitioner filed the instant habeas petition, which Respondent concedes is timely. Petitioner asserts four grounds for relief: (1) the harsher sentence she received following the second trial violates her right to due process; (2) her trial counsel rendered ineffective assistance under *Cronic* by failing to obtain a video expert and failing to ensure that the jury viewed all of the videotape evidence, in contravention of the First DCA's opinion, and the state court unreasonably applied *Strickland* on postconviction review; (3) the trial court erred by denying her motion for judgment of acquittal because the state did not prove that she committed an intentional act; and (4) the Florida Criminal Punishment Code is facially unconstitutional under *Blakely*.[3]

### Section 2254 Standard of Review

Under 28 U.S.C. § 2254(d)(2), a federal court may not grant a state prisoner's application for a writ of habeas corpus based on a claim already adjudicated on the merits in state court unless that adjudication "resulted in a decision that was based on

---

[3]The Petition asserts five grounds for relief, but Petitioner concedes that her claim numbered (4) in the Petition, pertaining to a jury instruction, is unexhausted and she waives that issue.  *See* Doc. 18.  For purposes of this Report, Petitioner's fifth claim for relief is identified as claim (4).

an unreasonable determination of the facts in light of the evidence presented in the

State court proceeding."  Under § 2254(e)(1), "a determination of a factual issue made

by a State court shall be presumed to be correct," and the petitioner "shall have the

burden of rebutting the presumption of correctness by clear and convincing evidence."

As to legal findings, a petitioner is entitled to federal habeas relief only if the state

court's adjudication of the merits of the federal claim "resulted in a decision that was

contrary to, or involved an unreasonable application of, clearly established Federal law,

as determined by the Supreme Court of the United States." § 2254(d)(1). "[C]learly

established Federal law, as determined by the Supreme Court of the United States,"

refers only to holdings (rather than *dicta*) of the Supreme Court, but decisions of lower

federal courts may be considered to the extent that they demonstrate how those courts

applied Supreme Court holdings. *Hawkins v. Alabama,* 318 F.3d 1302, 1309 (11th Cir.

2003) (citations omitted) ("The decisions of other federal circuit courts (and our decisions

for that matter) are helpful to the AEDPA inquiry only to the extent that the decisions

demonstrate that the Supreme Court's pre-existing, clearly established law compelled

the circuit courts (and by implication would compel a state court) to decide in a definite

way the case before them."). *See also Carey v. Musladin,* 549 U.S. 70, 74-77 (2006) (§

2254 refers to holdings, rather than *dicta,* of the Supreme Court, collecting circuit cases

"[r]eflecting the lack of guidance from this Court," on the issue).

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have

independent meanings. *Williams v. Taylor,* 529 U.S. 362, 404-406 (2000); *Bell v. Cone,*

535 U.S. 685, 694 (2002) (citing *Williams* ).  Under the "contrary to" clause, a federal

habeas court may grant the writ if the state court arrives at a conclusion opposite to that

reached by [the Supreme] Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case. *Williams,* 529 U.S. at 412-13. "Avoiding these pitfalls [described in *Williams v. Taylor* ] does not require citation of our cases-indeed, it does not even require *awareness* of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer,* 537 U.S. 3, 8  (2002) (emphasis in original). Further, "whether a state court's decision was unreasonable must be assessed in light of the record the court had before it." *Holland v. Jackson,* 542 U.S. 649, 652  (2004).

## Claim (1) Vindictive Sentencing

Petitioner contends that her second sentence violated due process because the sentencing court did not identify any conduct that occurred after the original sentencing that merited a harsher sentence.  Doc. 19 (citing *Pearce*, 395 U.S. at 726).  In affirming Petitioner's sentence on direct appeal, the First DCA cited *Texas v. McCullough*, 475 U.S. 134, 138 (1986).  *See Bryant v. State*, 896 So.2d 960 (Fla. 1ˢᵗ DCA 2005).

*Pearce* makes clear that the Constitution does not permit judges to re-sentence defendants more harshly in retaliation for their success on appeal: "[d]ue process of law . . . requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial."   *Pearce*, 395 U.S. at 726.  As a prophylactic rule to ward against such retaliation, the Court set forth a presumption of judicial vindictiveness that applies "whenever a judge imposes a

more severe sentence upon a defendant after a new trial." *Id*.  The Court held that whenever a judge re-sentences a defendant more harshly after a new trial obtained at the defendant's own behest, "the [non-vindictive] reasons for his doing so must affirmatively appear." *Id*.

Twenty years later, in *Alabama v. Smith*, 490 U.S. 794 (1989), the Supreme Court limited *Pearce*'s presumption of vindictiveness, clarifying that it applies only to circumstances "in which there is a 'reasonable likelihood' of vindictiveness," not simply in every case where a defendant receives a longer sentence.  *Smith*, 490 U.S. at 799 (citation omitted).  The Court reasoned that "'the evil the [*Pearce*] Court sought to prevent' was not the imposition of 'enlarged sentences after a new trial' but 'vindictiveness of a sentencing judge.'"  *Id*. at 799 (quoting *Texas v. McCullough*, 475 U.S. 134, 138 (1986)).  Thus, the Court held that if a defendant cannot show such a "reasonable likelihood of vindictiveness," "the burden remains upon the defendant to prove actual vindictiveness."  *Smith*, 490 U.S. at 799–800.

Accordingly, the *Pearce* presumption of vindictiveness may not be invoked by Petitioner absent a reasonable likelihood that Judge Cole imposed the consecutive five-year sentences to retaliate against Petitioner for succeeding in setting aside her original concurrent sentences imposed by Judge Francis.  When different judges imposing a sentence have assessed a defendant's varying sentences, "a sentence 'increase' cannot truly be said to have taken place," and the *Pearce* presumption is inapplicable. *McCullough*, 475 U.S. at 140; *see Dreyer v. Sec'y, Dept. of Corr.*, 2011 WL 3516156 (M.D. Fla. 2011), *slip op.* *6.  In *Dreyer*, the court concluded that the *Pearce* presumption may not be invoked where the judge who resentences a defendant is

different from the judge who imposed the original sentence.  *Id*. (citing *McCullough*, 475 U.S. at 140 ("In *Colten v. Kentucky* . . . we recognized that when different sentencers are involved, '[i]t may often be that the [second sentencer] will impose a punishment more severe than that received from the [first]. But it no more follows that such a sentence is a vindictive penalty for seeking a [new] trial than that the [first sentencer] imposed a lenient penalty.'")).

Petitioner argues that her sentence "gives the appearance of vindictiveness" and that there were no reasons given by the state trial court to support a "harsher" sentence. Doc. 11.  Because Petitioner's second sentence followed an entirely new trial and sentencing proceeding by a different judge, the court was not required by *Pearce* to justify the new sentence in comparison with the original sentence, because the new proceeding did not amount to a sentence "increase" for purposes of the *Pearce* presumption.  *See McCullough*, 475 U.S. at 140.

In the absence of a presumption of vindictiveness, Petitioner must demonstrate actual vindictiveness.  *See Dreyer*,  2011 WL 3516156 *6, (citing *Smith*, 490 U.S. at 799-800)).  Apart from the bare fact of having received consecutive sentences, Petitioner points to nothing in the record that would support a conclusion that Judge Cole acted vindictively in sentencing her.  *See id*. (mere fact of a longer sentence is insufficient to show vindictiveness); *Smith*, 490 U.S. at 799) (citing *Chaffin v. Stynchcombe*, 412 U.S. 17, 25 (1973) ("the *Pearce* presumption was not designed to prevent the imposition of an increased sentence on retrial 'for some valid reason associated with the need for flexibility and discretion in the sentencing process,' but was 'premised on the apparent need to guard against vindictiveness in the resentencing process'").

In this case, Judge Cole conducted a lengthy sentencing hearing at which Petitioner offered testimony and evidence in mitigation.  Exh. I.  At the conclusion of the hearing, Judge Cole explained his sentence as follows:

> Ms. Bryant, first, you have been found guilty by a jury of three counts of child abuse. At this time I'm going to adjudicate you to be guilty in each of those counts.
>
> It seems to me that there is a dichotomy here based on what I have heard not only today but in the trial that I witnessed. The PSI and the witnesses that you brought forward certainly paint a different picture of a person other than that I saw, and the jury saw, as part of the evidence. It is difficult for me to understand the two together, quite frankly.
>
> The jury believed that you had violated the trust that was given to you by the parents and by those that employed you in caring for those children. I believe that that outweighs any mitigation that has been presented here. I'm not prepared to mitigate based on what I have heard.
>
> We spent some time talking about the physical evidence, or the lack of it. There is no way that I know of, and I don't know that the guidelines allow me, to quantify in any way the psychological damage, if any, that was done to these children.
>
> Taking all that into consideration, I find that the guidelines are an appropriate means and they provide an appropriate length of time for punishment.

In emphasizing that the court was imposing consecutive sentences, Judge Cole stated "I believe that's appropriate given the violation of the childrens' right and the trust that I saw."  Exh. I at 280-81.

The record thus supports a conclusion that Judge Cole's sentence was based on non-vindictive factors that were clearly connected to the offenses of conviction and the evidence that was presented at Petitioner's second trial and sentencing hearing. Petitioner has not established that the state court's decision affirming her sentence was contrary to or an unreasonable application of *Pearce* and its progeny, and accordingly

she is not entitled to federal habeas relief on this claim.

### Claim (2) Ineffective Assistance of Counsel

Petitioner contends that her defense counsel at the second trial, John Leace, rendered ineffective assistance "due to his failure to follow the instructions of the [First DCA] directing that defense counsel retain and utilize the services of an expert videographer and that the jury be allowed to view all of the evidence introduced during" the second trial.  Petitioner contends that counsel's failure to follow the appellate court's instructions constituted a failure to subject the State's case against her to meaningful adversarial testing, and therefore amounted to *per se* ineffectiveness under *Cronic*. Petitioner points to several instances in the record where she contends that Leace's performance would have been aided by a video expert, terming counsel's efforts regarding the video as "feeble," "inept," and "inaccurate."  Doc. 11, 25-30.  Petitioner argues that if the Court does not find that counsel was *per se* ineffective under *Cronic*, then the Court should find that counsel was ineffective under *Strickland*.  *Id*.

In *Cronic*, the Supreme Court found that there are "circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case in unjustified." 466 U.S. at 658.  In these limited circumstances, a defendant need not make the specific showing of prejudice required by *Strickland*.  *Cronic*, 466 U.S. at 659. An ineffective assistance of counsel claim should be analyzed under *Cronic*, rather than *Strickland*, only if the defendant either "is denied counsel at a critical stage of his trial or if counsel entirely fails to subject the prosecution's case to meaningful adversarial testing."  *Hunter v. Moore*, 304 F.3d 1066, 1069 (11th Cir.2002).

There can be no dispute that Petitioner was represented by counsel at every

critical stage of the proceeding in this case, and therefore the first *Cronic* exception does not apply.  Further, in order for the second *Cronic* exception to apply, counsel's failure to test the prosecutor's case must be "complete."  *Bell v. Cone*, 535 U.S. 685, 697 (2005).  In this case, Petitioner contends that counsel failed to retain the services of a video expert and failed to ensure that the jury viewed the unedited time-lapse tapes, as Petitioner contends the First DCA opinion required.  Counsel's asserted failure to oppose the prosecution at specific points during the proceeding do not amount to a complete failure to oppose the prosecution such that prejudice should be presumed under *Cronic*.  *Bell*, 535 U.S. at 697.  Rather, such asserted specific attorney errors are subject to *Strickland's* performance and prejudice components.  *Id*. at 697-98.

Although the written state court opinion rejecting Petitioner's ineffective assistance claim does not specifically cite to *Strickland*, it is apparent that the court assessed the claim under the performance/prejudice standards of *Strickland*, as the court indicated it would do during the evidentiary hearing.  *See* Exh. Z at 22, Exh. AA at 17.  Therefore, this Court will assess Petitioner's claims under that same standard in evaluating whether the state court's rejection of the claim was contrary to or an unreasonable application of *Strickland*.

Under *Strickland*, to prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate (1) that his counsel's performance was below an objective and reasonable professional norm, and (2) that he was prejudiced by this inadequacy.  *Strickland*, 466 U.S. at 686.  The court may dispose of the claim if a defendant fails to carry his burden of proof on either the performance or the prejudice prong.  *Id*. at 697.

To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." *Grayson v. Thompson*, 257 F.3d 1194, 1216 (11th Cir. 2001) (emphasis omitted).  "The relevant question is not whether counsel's choices were strategic, but whether they were reasonable."  *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000).  There are no "absolute rules" for determining whether counsel's actions were indeed reasonable, as "[a]bsolute rules would interfere with counsel's independence–which is also constitutionally protected–and would restrict the wide latitude counsel have in making tactical decisions."  *Putnam v. Head*, 268 F.3d 1223, 1244 (11th Cir. 2001).  "To uphold a lawyer's strategy, [the Court] need not attempt to divine the lawyer's mental processes underlying the strategy."  *Chandler v. United States*, 218 F.3d 1305, 1314 n.16 (11th Cir. 2000) (en banc).  "No lawyer can be expected to have considered all of the ways [to provide effective assistance]."  *Id*.

> If a defense lawyer pursued course A, it is immaterial that some other reasonable courses of defense (that the lawyer did not think of at all) existed and that the lawyer's pursuit of course A was not a deliberate choice between course A, course B, and so on.  The lawyer's strategy was course A.  And [the Court's] inquiry is limited to whether this strategy, that is, course A, might have been a reasonable one.

*Id.*

To show prejudice, a defendant must show more than simply that counsel's unreasonable conduct might have had "some conceivable effect on the outcome of the proceeding."  *Strickland*, 466 U.S. at 693.  Instead, a defendant must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id*. at 694.  A "reasonable probability is defined

as a probability sufficient to undermine confidence in the outcome." *Id*.

When, as here, the state courts have denied an ineffective assistance of counsel claim on the merits, the standard a petitioner must meet to obtain federal habeas relief is a difficult one. *Harrington v. Richter*, ___ U.S. ___, 131 S.Ct. 770, 786 (2011).  The standard is not whether an error was committed, but whether the state court decision is contrary to or an unreasonable application of federal law that has been clearly established by decisions of the Supreme Court. 28 U.S.C. § 2254(d)(1).  As the Supreme Court explained, error alone is not enough, because "[f]or purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law."  *Harrington*, 131 S.Ct. at 785 (quotation marks omitted).  And "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable."  *Id*. at 786.

When faced with an ineffective assistance of counsel claim that was denied on the merits by the state courts, a federal habeas court "must determine what arguments or theories supported or, [if none were stated], could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court."  *Id*.  So long as fairminded jurists could disagree about whether the state court's denial of the claim was inconsistent with an earlier Supreme Court decision, federal habeas relief must be denied. *Id*.  Stated the other way, only if "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents" may relief be granted.  *Id*.

Even without the deference due under § 2254, the *Strickland* standard for judging

the performance of counsel "is a most deferential one." *Id.* at 788. When combined

with the extra layer of deference that § 2254 provides, the result is double deference and

the question becomes whether "there is any reasonable argument that counsel satisfied

*Strickland's* deferential standard." *Id.* Double deference is doubly difficult for a

petitioner to overcome, and it will be a rare case in which an ineffective assistance of

counsel claim that was denied on the merits in state court is found to merit relief in a

federal habeas proceeding.

   At the evidentiary hearing on Petitioner's Rule 3.850 motion, Petitioner's mother,

Sandra Bryant, testified that the family asked Leace to provide an expert to assist with

the case, and made Leace aware that funds were available to pay for the expert. Leace

testified that he reviewed the First DCA opinion, and did not read it to require him to

retain an expert witness for retrial. Leace testified that "[m]y reading of the case was

that essentially it was remanded almost on a discovery violation. It was unfair surprise

at the last minute and the defense should have the opportunity to do things such as

consult with an expert." Exh. AA at 54. Leace testified that he discussed the possibility

of retaining an expert with Petitioner's former counsel, Mr. Richmond, and Petitioner's

family. In Leace's assessment of the case, an expert witness was not necessary.

Leace testified that:

> My thoughts were and remain that the tape was coming in, one way
> or another. And that the best strategy for the case was to not run from the
> tape and try to hide behind an expert or get into a battle of experts as to
> what the tape showed or didn't show. The tape was what it was. But that I
> didn't then and don't believe now that the actions shown in the tape rise to
> the level of the charges that were brought against Ms. Bryant and that she
> was subsequently convicted of.
>
> And along those lines, my opinion was that if we hid from the tape

and acted scared of the tape and it came in, that it would be given more weight.  Based on the fact there were no other witnesses, there were no injuries to these children, no one even knew this had happened other than the fact that someone had reviewed the videotape, it was my opinion that it needed to not be hidden from.  It was what it was and the argument was that it didn't amount to the crime she was charged with.

Exh. AA at 56.

Richmond testified that following the reversal of Petitioner's first conviction, there were general discussions with Petitioner's family about hiring an expert.  Richmond got Leace involved in the case due to Richmond's health problems.  Richmond did not read the First DCA opinion as a mandate ordering the defense to hire an expert.  Richmond initially objected to the video excerpt on the basis of surprise, and with the knowledge that Petitioner's former co-worker, Debra Jefferson, had been tried and convicted with the video excerpt the day before Petitioner's trial.  Richmond believed the First DCA remand was intended to give the defense an opportunity to retain an expert, if the defense felt that one was needed.  *Id*. at 103-09.

Considering this testimony, as well as the testimony of Chew, the video expert, the state court found that Leace did not perform deficiently, in view of his strategic decision not to "nit-pick" the videotape evidence or engage in a battle of experts, but to focus on arguing that the videotape did not depict a crime.  The court found that the strategy was reasonable, particularly since the court "after studying the expert testimony carefully, fails to see how the real-time tape is not a fair duplicate of the original tape within the intent," of Florida's evidence rules.  The court concluded that the First DCA opinion reversing Petitioner's first conviction did not require Leace to retain a video expert, but was focused on the procedural issue of unfair surprise, which was not a

factor in the second trial.  The court found that Petitioner failed to meet her burden of

showing that counsel rendered ineffective assistance by failing to present an expert such

as Mr. Chew, because Chew's testimony would not have affected the court's ruling on

the admissibility of the real-time tape,[4]  would not have added to the information elicited

by counsel on cross-examination of Knowles, and "substantially all material factual

information was placed before the jury to consider in scrutinizing the relevancy and

reliability of this evidence."  The court further concluded that Petitioner was not

prejudiced when counsel did not insist that the original time-lapse tapes be taken to the

jury room when the jury asked for the copy, Exhibit 3, because the jury did not ask for

the time-lapse tapes and it was clear to the court that the image frames depicted on

Exhibit 3 were the same as the time-lapse tapes.  Exh. Z at 24.

Viewing the record as a whole, it cannot be said that the state-court's rejection of

Petitioner's ineffective-assistance claim was contrary to or an unreasonable application

of *Strickland*.  The state court carefully assessed the reasonableness of counsel's

interpretation of the First DCA remand, and the reasonableness of counsel's defense

strategy, which did not include hiring a video expert.  The record supports the state

court's conclusion that this strategy was reasonable, in view of the court's assessment of

the expert testimony at trial and at the evidentiary hearing, and the admissibility and

reliability of the video evidence.  The record further supports a conclusion that there is

---

[4]Chew opined that the real-time video excerpt viewed by the jury (identified as "Exhibit 3" at trial) was not a "duplicate" of the original time-lapse surveillance videos, but rather was a "movie" created by the State that depicted something other than what was depicted in the original time-lapse videos.  Exh. AA at 30.  Notably, however, Chew conceded on cross-examination that the State's Exhibit 3 did not alter any of the image frames that were captured on the original surveillance tapes.  *Id*. at 38.

no reasonable probability that the outcome of Petitioner's trial would have been different if counsel had retained an expert, based on the state court's conclusion that "the defense expert at the evidentiary hearing added no information materially different from what the state expert explained at trial."  Exh. Z at 23.  Finally, the record supports a conclusion that there is no reasonable probability that the outcome of Petitioner's trial would have been different if the jurors had been shown the time-lapse tapes (which were viewed by the trial judge), because the images depicted were the same as on the exhibit that was provided to the jury.   The state court's assessment comports with *Strickland's* requirements, and accordingly, Petitioner is not entitled to federal habeas relief on this claim.

### Claim (3) Denial of Motion for Judgment of Acquittal

Petitioner contends that the evidence was insufficient to find her guilty of simple child abuse, because the State failed to present evidence that she committed "an intentional act that could reasonably be expected to result in physical or mental injury." *See* Fla. Stat. § 827.03 (1999).  Petitioner argues that the best indicator of whether conduct is reasonably expected to result in injury is whether an injury did in fact occur, and the state court made a finding that no injuries occurred.  Doc. 11 at 33-35.

When reviewing a claim of the sufficiency of the evidence on federal habeas review, this Court is required to view the evidence in the light most favorable to the prosecution and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.   *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  Under Florida law, "[t]he statutory offense of child abuse is no longer limited to actual physical or mental injury inflicted on a child. It now includes 'any

intentional act that could reasonably be expected to result in physical or mental injury to a child.'" *Clines v. State* 765 So.2d 947, 948 (Fla. 5th DCA 2000).

As explained above, the evidence against Petitioner was a videotape, and that videotape is not part of the record.  On habeas review, it is Petitioner's burden to show that the videotape was insufficient to establish that her acts could reasonably be expected to result in physical or mental injury.  Based upon the descriptions of the videotape evidence that are contained within the trial record, the Court concludes that Petitioner has not met this burden.

The State has provided the Court with Exhibit FF, a copy of the probable cause affidavit prepared by Detective Bruce Gaines after viewing the time-lapse surveillance videos.  Detective Gaines summarized the tapes as follows:

> On 6-16-99 at approximately 0938 hours the video clearly reveal that after Bryant changed B.S.'s diaper, she stood him up on the diaper table and forcefully pushed his forehead backwards in a striking manner causing his head to recoil out of control.
>
> . . .
>
> At approximately 0948 hours on 6-16-99 Bryant was seen wearing the same rubber gloves on her hands from the diaper table when [sic] went to washed [sic] K.G.'s face. Bryant is seen roughly twisting and holding K.G.'s head back as she held a wash rag over his face with the gloved hand which covered his nose and mouth as though she was attempting to silence his cry. K.G. was observed waving both of his arms in the air and kicking his feet as though he was he was [sic] gasping for a breath[ ] of air. Bryant continued this for approximately twenty-five seconds as she looked around the room to assure that none of the other teachers could see what she was doing to K.G.
>
> . . .
>
> [On June 17, 1999] Sometime between 1011 hours and 1100 hours several kids were seen taking toys from J.M. while she was sitting at the feeding table alone. J.M. appeared to become upset and started to cry. Bryant responded to the feeding table removed a plastic toy [sic] J.M.'s hands and slapped J.M. in the face with the plastic toy. The force from the blow caused J.M.'s head recoil backwards, nearly causing her to fall from

the chair.

Petitioner contends that this document was not introduced as evidence during the trial and therefore cannot be relied upon to determine whether the trial court erred in denying the motion for judgment of acquittal.   Doc. 18.  Petitioner does not contend that the document does not fairly summarize the contents of the videotape that was played for the jury and viewed by the trial judge.  Further, this description of the events depicted on the time-lapse video is consistent with the parents' testimony referencing Bryant's acts, and with the State's description of the evidence in opposing Petitioner's motion for judgment of acquittal and in closing argument.  Exh. G at 178-79, 212-24.  Viewing this evidence in the light most favorable to the prosecution, a rational trier of fact could have found that Petitioner committed intentional acts that could reasonably be expected to result in physical or mental injury to the children depicted in the video.  Petitioner has not established that the trial court's denial of her motion for judgment of acquittal merits federal habeas relief.

### Claim (4) Constitutionality of Florida Criminal Punishment Code Under *Blakely*

Petitioner argues that the Florida Criminal Punishment Code is unconstitutional because it allows a sentencing court to increase a sentence on the basis of victim injury points that are decided by a preponderance of the evidence.  Petitioner also argues that the code contains a "floating maximum" pursuant to which the highest permissible sentence is determined by factors not found beyond a reasonable doubt by the jury. Doc. 11 at 37-43.

In *Apprendi v. New Jersey*, the Supreme Court held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed

statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. 466, 490 (2000). In *Blakely v. Washington*, the Court clarified that the "statutory maximum" for *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant. 542 U.S. 296, 303 (2004). In *United States v. Booker*, the Supreme Court extended its holding in *Blakely* to the United States Sentencing Guidelines, holding that the mandatory nature of the federal guidelines rendered them incompatible with the Sixth Amendment's guarantee to the right to a jury trial. 543 U.S. 220, 243–44 (2005). Finally, in *Cunningham v. California*, the Supreme Court extended the reasoning of *Apprendi, Blakely*, and *Booker* to California's determinate sentencing law (DSL). 549 U.S. 270 (2007). Under California's sentencing plan, the crime in question carried a lower term of 6 years, a middle term of 12 years, and an upper term of 16 years. Id., 549 U.S. at 275. The judge was required to impose the middle term unless he found one or more aggravating facts at the sentencing hearing. *Id.* As in *Booker*, such aggravating facts were found by the court based on the preponderance of the evidence, and not by a jury. *Id.* at 288. Cunningham received the higher sentence based on the judge's fact finding, and the Supreme Court reversed. *Id.* The Court reasoned that while Cunningham's sentence was below the statutory maximum, the DSL effectively made the middle term the mandatory term, much as was the case with the federal sentencing guideline scheme struck down in *Booker. Id.* The Court therefore held that the judge's fact finding deprived Cunningham of his Sixth and Fourteenth Amendment right to a jury trial. *Id.* at 293.

Respondent contends that this claim is procedurally barred because Petitioner did

not raise the claim in the trial court, although she did raise it in her direct appeal. Petitioner contends that facial constitutional attacks may be raised for the first time on appeal.  Doc. 18 (citing *A.J. v. K.A.O.*, 951 So. 2d 30, 32 (Fla. 5th DCA 2007)).

Even if Petitioner properly preserved this claim, she has not established that her sentence was imposed in violation of *Blakely*.  Petitioner's statutory maximum sentence was five years.  *See* Fla. Stat. § 775.082(3)(d) (establishing five-year maximum sentence for third degree felony). Notably, Petitioner's sentencing scoresheet did not assess any points for victim injury or other sentencing enhancements, and therefore she was never exposed to sentencing for aggravating factors that were not determined by the jury.  Petitioner was not exposed to sentencing under a "floating maximum" under the Code, because her scoresheet established a lowest permissible prison sentence of 33 months that did not exceed the statutory maximum, and therefore did not increase the maximum potential sentence beyond that provided in the statute.  *See* Exh. J. Accordingly, Petitioner has failed to demonstrate that her sentence was imposed in violation of *Blakely* and, therefore, Petitioner is not entitled to federal habeas relief on this claim.

## Certificate of Appealability

Section 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

Rule 11(a) also provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED:**

1. That the petition for writ of habeas corpus (Doc. 1) be **DENIED**.

2. That a certificate of appealability be **DENIED.**

**IN CHAMBERS**  this 15th day of February 2012.


*s/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge


**NOTICE TO THE PARTIES**

**A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**